UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| OCTAVIO SALINAS RAMIREZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:25-cv-04085-SLD-RLH |
| KRISTI NOEM, JOSEPH EDLOW,[1] and PAM BONDI, | ) ) ) ) |
| Defendants. | ) ) |

ORDER

This is a case against Defendants Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"), Joseph Edlow, Director of the United States Citizenship and Immigration Services ("USCIS"), and Pam Bondi, Attorney General of the United States, for unreasonable delay in processing Plaintiff Octavio Salinas Ramirez's petition for U Nonimmigrant Status (a "U Visa"). Before the Court are Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, ECF No. 9, and Defendants' motion for leave to file a reply in support of their motion to dismiss, ECF No. 11. For the following reasons, both motions are GRANTED.

BACKGROUND

I.     The U-Visa Program

In 2000, Congress enacted the Trafficking Victims Protection Act, 22 U.S.C. §§ 7101–7115, "to combat trafficking in persons, . . . to ensure just and effective punishment of

---

[1] Salinas Ramirez brings this case against Kika Scott. On July 18, 2025, Joseph Edlow assumed office as director of the United States Citizenship and Immigration Services. Pursuant to Federal Rule of Civil Procedure 25(d), Joseph Edlow is automatically substituted as a defendant. The Clerk is directed to terminate Kika Scott as a party on the docket and add Defendant Edlow.

traffickers, and to protect their victims." *Id.* § 7101(a).  This act created the U Visa program, wherein USCIS, an agency of DHS,[2] may grant U Visas to the victims of certain crimes who assisted law enforcement in the investigation and prosecution of the criminal activity.  8 U.S.C. § 1101(a)(15)(U)(i); *see generally* 8 C.F.R. § 214.14.  Qualifying family members may apply for derivative U Visas.  8 U.S.C. § 1101(a)(15)(U)(ii).  U Visa holders receive lawful status and work authorization, 8 U.S.C. § 274a.12(a)(19)–(20), and they are eligible to obtain lawful permanent residence if they remain present in the United States for at least three years after receiving the U Visa, 8 U.S.C. § 1255(m)(1); 8 C.F.R. § 245.24(b).  Congress statutorily capped the issuance of U Visas to 10,000 principal U Visas per year, not including derivative family members.  8 U.S.C. § 1184(p)(2).

After the Victims Protection Act was passed in 2000, DHS failed to implement the U Visa program through regulation.  *Taylor v. McCament*, 875 F.3d 849, 851 (7th Cir. 2017).  On January 5, 2006, Congress passed the Violence Against Women and Department of Justice Reauthorization Act, which directed DHS to issue implementing regulations within 180 days.  *Id.*  USCIS issued interim regulations in September 2007, over a year after the deadline set by Congress.  *Id.*  Final regulations went into effect in January 2009.  *Id.* at 852

Since final regulations were promulgated, the number of U Visa petitions received by USCIS has risen steadily.  *See Number of Form I-918 Petitions for U Nonimmigrant Status*, USCIS (2025), https://www.uscis.gov/sites/default/files/document/data/i918u_visastatistics_fy2025_q2.xlsx.

---

[2] Prior to March 2003, the relevant agency was the Immigration and Naturalization Service ("INS"). *Taylor v. McCament*, 875 F.3d 849, 851 n.1 (7th Cir. 2017).  Congress created DHS in 2002, established USCIS as a department therein, and transferred all responsibility for visa petitions, including U Visas, from INS to USCIS. *Id.*  When implicating agency actions prior to this transfer, all references to DHS or USCIS in this order also refer to INS.

USCIS has received over 20,000 petitions in every fiscal year since 2012. *Id.* In the 2024 fiscal year, it received over 41,000 petitions. *Id.* As a result, in every year since 2010, USCIS has issued 10,000 principal U-Visas, equal to the statutory cap. *Id.* The statutory cap, combined with the growing number of petitions, has caused the backlog of pending principal petitions to balloon to nearly 250,000 as of 2025. *Id.*

Two structures were created to address this growing backlog. Anticipating the coming influx, USCIS created a waiting list when first promulgating regulations. *See* 8 C.F.R. § 214.14(d)(2). According to this regulation, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list." *Id.* These petitioners are given priority when additional U Visas are available the next fiscal year, with the order determined by the date each petition was filed. *Id.* U Visas are awarded to all petitioners on the waiting list before they are given to any new applicants. *Id.* USCIS grants deferred action to all petitioners and qualifying family members on the waiting list and may, in its discretion, also provide work authorization. *Id.* Quickly, however, a backlog developed even for placement on the waiting list. *See* USCIS, Humanitarian Petitions: U Visa Process Timings 4 (2021), https://www.uscis.gov/sites/default/files/document/reports/USCIS-Humanitarian-Petitions.pdf ("In the fourth quarter of [fiscal year] 2020, the median processing time from receipt of a U visa petition until placement on the waiting list was 50.9 months . . . .").

To address this growing delay even for waiting list placement, USCIS, by policy statement, created the Bona Fide Determination ("BFD") processes. *See generally* USCIS Policy Manual, Volume 3, Part C, Chapter 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 ("BFD Policy Manual"). During this process, USCIS grants a Bona Fide Determination Employment Authorization Document ("BFD EAD"), which comes with deferred

action for the period of the BFD EAD, to petitioners whose pending petition is "bona fide," who pose no risk to national security or public safety, and who merit a favorable exercise of discretion. *Id.* Petitioners who do not receive a favorable BFD determination receive a full review through the waiting list process, but those who receive a BFD EAD are not considered for waiting list placement. *Id.* They instead receive a full review of their petition when they have next priority for a U Visa. *Id.*

## II.     Factual Background[3]

Salinas Ramirez is a citizen of Mexico who now resides in Rock Island County, Illinois. He has lived in the United States since 2004. Between 2008 and 2012, he worked at Los Agaves Mexican Restaurant, where he "worked long shifts and each pay period his employer instructed him and the other employees to cash their paychecks and return their pay to him." Compl. 13, ECF No. 1. After the Department of Labor became aware of these wrongful labor practices, Salinas Ramirez assisted with the department's investigation. As a result, he suffered retaliatory behavior from his employer that ultimately forced him to leave his employment.

On September 10, 2018, Salinas Ramirez filed a petition for a U Visa. He received a BFD EAD over four years later, on May 12, 2023. At the time of his complaint, Salinas Ramirez had been waiting for over six years and seven months and had not received waiting list placement or a final decision on his petition. He claims to have suffered "significant financial and emotional burdens as a result of the unreasonable period of time that his case has been pending without action by USCIS." Compl. 16.

---

[3] For the sake of ruling on a motion to dismiss, the Court "accept[s] as true all factual allegations in the . . . complaint and draw[s] all permissible inferences in [the plaintiff's] favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Unless otherwise noted, the factual background is drawn from Salinas Ramirez's Complaint, ECF No. 1.

Salinas Ramirez brings two counts for unreasonable delay: (1) violation of the Administrative Procedure Act for failure to adjudicate his petition or place him on the waiting list in a reasonable time, and (2) violation of the due process clause for failure to promulgate the necessary regulations to implement the U Visa program. He asks the Court to order USCIS to make a final determination of his petition, give him priority for a U Visa in the next fiscal year, or, in the alternative, place him on the waiting list.

Defendants filed a motion asking the Court to dismiss Salinas Ramirez's complaint for lack of jurisdiction. *See* Mot. Dismiss 9–13. They contend that Salinas Ramirez lacks standing because any injury was caused by the statutory cap, not by an action of USCIS, *id.* at 9–12, or, in the alternative, his claim is moot because he has received a BFD EAD, *see id.* at 12–13. If the Court reaches the merits, Defendants seek dismissal for failure to state a claim. *See id.* at 13–19.

### DISCUSSION

**I.     Motion for Leave to File a Reply**

The Civil Local Rules state that "[a] reply to the response is only permitted with leave of Court." Civil LR 7.1(B)(3). "Replies may be allowed for reasons including the non-movant's introduce[tion] of new and unexpected issues in his response, and the interest of completeness." *Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 658 (C.D. Ill. 2023) (citations omitted). Defendants claim that a reply is necessary because Salinas Ramirez's response "raises incorrect factual contentions and legal arguments that Defendants wish to clarify and distinguish." Mot. Leave Reply 2. Although factual disputes are generally resolved in favor of plaintiffs at the motion to dismiss stage, the disputes in this case have to do with the parties' understanding of the legal effects of statutory and regulatory programs. *Compare* Resp. Mot. Dismiss 8, ECF No. 10 ("Waiting list placement is a distinct entitlement that interim measures—BFDs, deferred action,

5

and temporary work authorization—cannot satisfy . . . ."); *with* Reply Supp. Mot. Dismiss 4, ECF No. 11-1 ("[A] waiting list determination does not provide any additional benefits that a bona fide determination does not provide."). Thus, the Court finds it appropriate, where possible, to resolve these disputes by consulting the relevant regulations and policy statements and by taking judicial notice of the relevant USCIS records and reports. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) ("The Court may of course judicially notice public records and government documents, including those available from reliable sources on the Internet."). As Defendants' reply clarifies the nature of USCIS programs, the Court GRANTS the motion for leave to reply in the interest of completeness.

## II.     Motion to Dismiss

Defendants move to dismiss Salinas Ramirez's claims on grounds that the Court has no subject matter jurisdiction and that his complaint fails to state a claim. Mot. Dismiss 9–19. Because the Court finds that Salinas Ramirez lacks standing, it need not consider the merits of his complaint.

### a.     Legal Standard

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint." *Bultasa Buddhist Temple of Chi. v. Nielson*, 878 F.3d 570, 573 (7th Cir. 2017). When resolving such a motion, the Court "accept[s] as true all well-pleaded factual allegations and draw[s] reasonable inferences in favor of the plaintiffs." *Id*. The Court may look beyond the complaint's jurisdictional allegations and view other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008). "[A] plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin*

*Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

### b. Analysis

Defendants argue that Salinas Ramirez lacks standing to pursue his claims because of the statutory cap on U Visas and that his claims became moot when he received a BFD EAD. Mot. Dismiss 9–13. A plaintiff must have standing to pursue an action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A party has standing to bring suit if they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The third prong is satisfied only if there is "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Mere "psychic satisfaction," such as that obtained by punishing a defendant, is not sufficient— the relief requested must actually remedy the injury suffered. *Id.* at 107. Because Salinas Ramirez's injuries are not redressable through judicial action, the Court need not address either mootness or whether the remaining standing prongs are satisfied.[4]

---

[4] Defendants present their arguments through the lens of several different justiciability doctrines. In addition to redressability, for instance, Defendants frame their argument about the statutory cap as an issue of traceability, arguing that Salinas Ramirez's injury is caused by the statutory cap, not by agency actions. Mot. Dismiss 10–11. And they discuss both mootness and injury-in-fact when considering whether the waiting list and BFD EAD programs are differentiable. *See* Mot. Dismiss 12–13 (mootness), Reply Mot. Dismiss 5–8 (injury-in-fact). Further, many courts have analyzed similar arguments under the framework of injury-in-fact. *See, e.g.*, *De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 755 F. Supp. 3d 1266, 1275–76 (N.D. Cal. 2024); *Argueta v. Jaddou*, No. 4:23-CV-3002, 2023 WL 8082113, at *8 (D. Neb. Nov. 21, 2023).

In this case, however, the Court finds it proper to assess Defendants' arguments through the lens of redressability. They do not appear to dispute that Salinas Ramirez has alleged an injury. *See* Mot. Dismiss 9 (seeking dismissal because Salinas Ramirez "can neither establish that his alleged injury is traceable to the Defendant, nor that his alleged injury would be redressed by a favorable ruling"). And while Defendants present redressability, mootness, and causation arguments, the thrust of their motion is that any remedy the Court has the power to grant does not cure Salinas Ramirez's alleged injuries. The arguments likely could be analyzed under several different justiciability frameworks, but for the sake of conceptual clarity, the Court addresses each of the arguments in relation to redressability.

Defendants argue that the USCIS cannot issue Salinas Ramirez a U Visa because the statutory and regulatory scheme leaves the agency without the power to grant such relief. *See* Mot. Dismiss 9–11. They cite 8 U.S.C. § 1184(p), which limits principal U Visas to 10,000 annually, and 8 C.F.R. § 214.14(d)(2), which requires USCIS to adjudicate U Visa petitions on a first-in-first-out basis. *Id.* at 11. It follows, Defendants continue, that judicial action cannot redress his injuries because no court order can compel the agency to act contrary to these statutory and regulatory schemes. *Id.*

Salinas Ramirez states that he "does not ask this Court to compel USCIS to exceed the statutory cap or advance him ahead of earlier filers." Resp. Mot. Dismiss 6. Instead, he suggests that his injury can be redressed by "timely adjudication and placement on the U-visa waiting list to preserve his priority." *Id.* at 7. He roots this claim in the conviction that waiting list placement provides benefits beyond those currently conferred by a BFD determination, *id.* at 8–9, a position that Defendants ardently reject, *see* Reply Mot. Dismiss 2–5.

Although Salinas Ramirez does not seeks relief in the form of an immediate grant of a U Visa or prioritization over earlier-filed applications, for the sake of completeness the Court notes that such relief is unavailable under *Taylor v. McCament*, 875 F.3d 849 (7th Cir. 2017). In that case, Taylor, a U Visa applicant who had been placed on the waiting list, alleged that USCIS had, by unreasonably delaying implementation of U Visa regulations, wrongly withheld 80,000 total U Visas. *Id.* at 852. He therefore asked the court to order USCIS to immediately issue 80,000 U Visas to applicants on the waiting list. *Id.* The court held that Taylor lacked standing because "the agency lacks the statutory authority to give [Taylor] the relief sought." *Id.* at 854. It reasoned that Congress clearly limited U Visas to 10,000 per year, so, "even if a court ordered

8

USCIS to immediately issue 80,000 U-visas, the agency would lack the statutory authority to do so." *Id.*

Although the "first-in-first-out" policy is a creature of regulation rather than statute, the same reasoning applies. Regulations have "the force and effect of law," meaning agencies are bound to adhere to their requirements. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954). It is therefore axiomatic that "courts are not authorized to issue injunctions that authorize or direct people to violate valid federal statutes or regulations." *Ind. Prot. & Advoc. Servs. Comm'n v. Ind. Fam. & Soc. Servs. Admin.*, 149 F.4th 917, 939 (7th Cir. 2025) (quotation marks omitted). Because it would violate binding statutes and regulations, the Court lacks the authority to order USCIS to grant more than 10,000 principal U Visas per year, grant Salinas Ramirez a U Visa before those on the waiting list, or place him on the waiting list before those who applied before him.[5] The only remaining relief available would be for the Court to order USCIS to evaluate all applicants up to Salinas Ramirez for eligibility for the waiting list.

The crux of the dispute over this last available remedy is whether waiting list placement would grant benefits beyond those conferred by a BFD EAD. If it would not, then the Court ordering such action would not "redress the alleged injury." *Steel Co.*, 523 U.S. at 103.

Defendants adamantly maintain that the two provide identical benefits. *See* Reply Mot. Dismiss 5–8. Salinas Ramirez disagrees, claiming that there are three ways placement on the waiting list differs from a BFD determination: (1) it secures priority for the grant of a U Visa, (2) it provides additional protections and benefits—such as work authorization, deferred action, lawful status, and accrual towards adjustment—"not provided by temporary measures like

---

[5] Though the parties do not raise the issue, the same is true of Salinas-Ramirez's request that the Court order USCIS to credit any time spent in deferred action toward the three-year continuous presence requirement for adjustment of status. Compl. 21. Because the three-year requirement is created by statute, 8 U.S.C. § 1255(m)(1), the Court cannot order USCIS to violate the law by modifying its terms.

9

BFDs," and (3) it provides greater weight and stability than a BFD determination.  Resp. Mot. Dismiss 8.  The Court addresses each of these arguments in turn.

First, there is no difference in priority between petitioners on the waiting list and those holding a BFD EAD.  According to the USCIS Policy Manual,

> USCIS prioritizes all petitions for adjudication of U nonimmigrant status under the statutory cap in the order they were received, ensuring older petitions maintain their priority over newer petitions.  Consequently, when U nonimmigrant visas become available each fiscal year, USCIS draws from both BFD recipients and waitlisted petitioners, in order of filing date with the oldest filings receiving highest priority, to meet the statutory cap.

USCIS Policy Manual, Volume 3, Part C, Chapter 7(C), https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-7 ("Final Adjudication Policy Manual").  There have been no allegations that USCIS is not following this policy.[6]  Being placed on the waiting list would have no impact on the priority for which Salinas Ramirez would receive a U Visa.

Second, a waiting list placement would not provide any additional protections beyond those conferred by a BFD EAD.  Regulations require USCIS to grant deferred action or parole to all petitioners on the waiting list and their qualifying family members, and USCIS may authorize employment for the same.  8 C.F.R. § 214.14(d)(2).  Similarly, a BFD EAD inherently provides employment authorization and comes with a grant of deferred action "for the period of the BFD EAD."  BFD Policy Manual.  The benefits are thus the same: both provide deferred action and employment authorization, nothing more.  Salinas Ramirez points to no authority to support his claim that waiting list placement "confer[s] lawful status" or "allow[s] accrual toward adjustment," Resp. Mot. Dismiss 8, nor is the Court aware of any.

---

[6] In his prayer for relief, Salinas Ramirez makes a passing suggestion that USCIS does not adhere to its first-in-first-out regulations.  *See* Compl. 21 (asking the court to [e]njoin USCIS from relying on its [first-in-first-out] processing defense, allowing for discovery where evidence will show deviation from [first-in-first-out] procedures").  However, insofar as this requested relief is construed as an allegation, it plainly falls short of the 12(b)(1) requirement that factual allegations be "well-pleaded," *Bultasa Buddhist Temple*, 878 F.3d at 573.

10

Finally, Salinas Ramirez contends that a waiting list placement has greater weight and stability than a BFD EAD. *Id.* The Court discerns three reasons Salinas Ramirez may believe this to be the case: (1) a BFD determination, unlike placement on the waiting list, can be revoked at will, *see id.* (describing a BFD EAD as "revocable"); (2) being placed on the waiting list would mean that he is guaranteed to eventually receive a U Visa, *see id.* at 7 (contrasting "interim benefits" with the "full adjudication" of a waiting list placement); and (3) the waiting list is a more stable regime because it is created by regulation, not agency policy, *see id.* at 8 (describing a BFD EAD as "a creation of agency policy").

There is no functional difference in the revocability of the two programs. A BFD EAD and grant of deferred action is valid for four years. BFD Policy Manual § (C)(3). Those who seek to renew their BFD EAD may do so without a fee, but "[a]n initial BFD EAD grant does not guarantee future renewals." *Id.* § (C)(6). "At any point during the validity period, USCIS has the right to revoke employment authorization or terminate deferred action" under certain circumstances. *Id.* However, "[i]f USCIS determines that adverse information may impact a principal petitioner's ability to maintain a BFD EAD and deferred action, USCIS will initiate a waiting list review for the principal petition." *Id.* Unlike BFD EAD holders, "[w]aitlisted petitioners remain on the waiting list until their petitions are adjudicated for U nonimmigrant status." USCIS Policy Manual, Volume 3, Part C, Chapter 6(B), https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-6. Grants of deferred action are preserved for the full length of waiting list placement, but employment authorization is only valid for 4 years, at which point the petitioner must request a renewal. *Id.* In sum, the only real difference between the two is that the BFD is revocable and must be renewed after four years. However, because any revocation of

11

BFD EAD status automatically triggers a waiting list review, there is no functional advantage to being on the waiting list.

With respect to the guarantee of a future U Visa, the only difference between the two programs is the timing of the full review. Those on the waiting list have received a full evaluation of their petition, *see* Final Adjudication Policy Manual § (B), while the BFD process only includes a determination of whether the petition is bona fide, whether the petitioner poses a risk to national security or public safety, and whether the petition otherwise merits a favorable exercise of discretion, *see* BFD Policy Manual. As a result, when they have priority for a U Visa, those holding a BFD EAD are subject to a "full file review to determine eligibility for U nonimmigrant status." Final Adjudication Policy Manual § (A). Similarly, before granting a U visa to those on the waiting list, USCIS conducts an "additional review of the petition and update background checks to establish continuing eligibility." *Id.* § (B). This means waiting list placement also "does not guarantee a grant of U nonimmigrant status." *Id.* The difference is only in the timing of the screenings: those on the waiting list receive a full review initially and an additional review at final screening; those with BFD EAD face a lower initial bar and are only subject to a full review when they have priority for a U Visa.

Finally, there is admittedly a difference in the nature of the legal regimes undergirding the two programs. The BFD process is a creature of USCIS policy; it is authorized by statute, 8 U.S.C. § 1184(p)(6), but enacted only by USCIS's policy manual. *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 441 (6th Cir. 2022). As such, it is not subject to the APA's notice and comment requirements, and "[a] future administration could rescind the BFD process just as easily as [the Biden] administration established it." *Id.*; *see* 5 U.S.C. § 553(b) (excepting "interpretative rules" and "general statements of policy" from the APA's notice and comment

12

requirements).  The waiting list, on the other hand, is created by regulation, *see* 8 C.F.R. § 214.14(d)(2), meaning it is only revocable through the rulemaking process.  *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015); *see* 5 U.S.C. § 553.

To summarize the Court's analysis thus far, there are only two material differences between the two programs: (1) whether the petitioner receives a full screening immediately or only when they have priority for a U-Visa and (2) the ease with which USCIS can alter or revoke the program.  Salinas Ramirez only has standing if his injuries are redressable through either (1) receiving a full screening now and only an additional review to determine continuing eligibility later or (2) being placed in a program with greater legal stability.

The first distinction—the time at which Salinas Ramirez receives a full screening—does not make the relief he ultimately seeks (receipt of a U-Visa) either more likely or more expeditious.  In either case, he is eventually subject to the same review process.  As a result, no court has recognized this distinction as legally significant.  *See Argueta v. Jaddou*, No. 4:23-CV-3002, 2023 WL 8082113, at *8 (D. Neb. Nov. 21, 2023) ("[D]omestic plaintiffs are not denied anything to which they are entitled because they received BFDs instead of spots on the U Visa waiting list.").

Similarly, the Court has found no authority suggesting that distinction between a program created by regulation and one created by agency policy is legally relevant for purposes of standing, especially when there is no allegation that termination of a policy statement is impending, c*f. Lujan*, 504 U.S. at 560 (requiring, for purposes of an injury-in-fact, that an injury be "actual or imminent").  Once again, Salinas Ramirez's argument has been rejected by other courts.  *See De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 755 F. Supp. 3d 1266, 1275 (N.D. Cal. 2024) (concluding for purposes of injury-in-fact that there was no cognizable

distinction between BFD EAD and waitlist placement although one is a "regulatory benefit" while the other is a "mere policy benefit"). *Barrios Garcia* does not compel a different conclusion. In that case, the plaintiff presented a facial challenge to USCIS's failure to institute a program to process pre-waitlist work-authorization applications, along with an as-applied challenge to the agency's failure to grant him work authorization. *Barrios Garcia*, 25 F.4th at 440–41. The Sixth Circuit held that the introduction of the BFD process did not moot his facial challenge because the revocable nature of the BFD process meant the plaintiff's injuries were capable of repetition yet evading review. *Id.* at 441. It did not moot the plaintiff's as-applied challenge because he had not yet received a BFD EAD. *Id.* at 440. *Barrios Garcia* is not persuasive here because (1) it did not address the issue of standing, (2) Salinas Ramirez does not present a similar facial challenge to USCIS's failure to institute a program to process pre-waitlist work-authorization applications, and (3) Salinas Ramirez has already received a BFD EAD. Thus, the Court does not find the difference in legal source of the BFD EAD and waiting list programs to be a cognizable difference for the purposes of standing. If the BFD program is terminated by a new policy, Salinas Ramirez can refile his case at that time.

In conclusion, no feature of waiting list placement, over and against a BFD EAD, would redress any of Salinas Ramirez's alleged injuries. Since he has already received a BFD EAD, the Court lacks the power to grant a remedy that would redress Salinas Ramirez's injuries. His claims are therefore DISMISSED for lack of standing.

## CONCLUSION

Accordingly, Defendants Kristi Noem, Joseph Edlow, and Pam Bondi's motion for leave to reply, ECF No. 11, is GRANTED. The Clerk is directed to file the Reply, ECF No. 11-1 on

the docket. Defendants' motion to dismiss, ECF No. 9, is GRANTED. The Clerk is directed to enter judgment and close the case.

    Entered this 2nd day of March, 2026.

                                               s/ Sara Darrow
                                               SARA DARROW
                                CHIEF UNITED STATES DISTRICT JUDGE